UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | |
|---|---|
| IN RE: | Chapter 7 |
| ED EDWARDS and | Case No. 10-10435 |
| SALLY EDWARDS, | Judge Joseph M. Scott |
| Debtors | |
| | |
| DANIEL M. MCDERMOTT, U.S. TRUSTEE, | |
| Plaintiff | |
| v. | Adv. Pro. No. 10-1008 |
| ED EDWARDS, | |
| Defendant | |

## MEMORANDUM OPINION

At "the heart of the fresh start provisions of the bankruptcy law" lies § 727 of the Bankruptcy Code. H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977). Section 727 provides that a Chapter 7 debtor may be granted a discharge of his debts, thus relieving him of all personal liability for those discharged debts, unless grounds for denial of the discharge exist based upon the acts of the debtor. 11 U.S.C. § 727(a). The grounds for denial of the discharge are enumerated in subsections (1) through (12) of § 727(a), and include, *inter alia*, concealment of property by the debtor, false statements made by the debtor, and the withholding of information from an officer of the estate. 11 U.S.C. § 727(a)(2), (a)(4)(A), and (a)(4)(D), respectively. In this adversary proceeding, the United States Trustee ("Trustee") argues that the Debtor should be denied a discharge under § 727(a) because he allegedly concealed property of the estate, made false statements as to the value of his property, failed to explain the difference between the income he reported to the Court and the amount of money he has been able to use to pay down debts related to his assets, and failed to obey the Court's order by not producing flight logs to the Chapter 7 Trustee within the time ordered by the Court.

Upon agreement of the parties, the Court held a trial on this matter on May 3, 2011, in conjunction with the hearing on the Debtor's opposed motion to convert his Chapter 7 case to

1

Chapter 13. In the context of the motion to convert, the Court found that the Debtor intentionally failed to disclose the potential equity in his assets by undervaluing certain property in his schedules, and that the disclosure of his true income and expenses was not credible. For these reasons, the Court found that the Debtor's motion was not brought in good faith and it was therefore denied.

The matter presently before the Court, however, involves an entirely different standard and legal analysis, although the material facts remain the same as those brought forth in the contested motion to convert. Notwithstanding the different legal standard, the Court finds that by attempting to mislead creditors and the Court by undervaluing his assets, the Debtor has committed a fraudulent statement under oath in violation of § 727(a)(4)(A). Accordingly, the Debtor will be denied a discharge of his debts.

I.

The Debtor attended the University of Kentucky and Marshall University, and received bachelor's degrees in both mechanical engineering and mathematics. He also completed thirty hours of graduate school studying mathematics and physics. Upon completing his education, the Debtor became self-employed and operated businesses which sold stereo equipment and/or mobile phones. Currently, the Debtor operates several business entities, including the Phone Store, a retailer of car stereo equipment and prepaid mobile phones, and Car Stereo Wholesale Incorporated ("CSW"). The Debtor also testified that he does business with the mobile phone service provider Sprint through an entity called CS Wholesale, Inc., a business entity that has not been registered with the Kentucky Secretary of State. The Debtor testified at the evidentiary hearing that he prepares his own personal tax returns. A comparison of the handwriting in the 2008 and 2009 CSW tax return and the Debtor's 2008 and 2009 tax returns shows that he also prepared the corporate tax returns for CSW.

The Debtor organized ESM Development LLC ("ESM") in September 2008 to operate the Debtor's and Sally Edwards' real estate holdings. The Debtor and Sally Edwards held several assets that were transferred to ESM prior to the filing of their petition. These assets included properties located at Forest Avenue, Jackson Avenue, Blackburn Avenue in Ashland, Kentucky, as well as a 1981 Cessna T210 Aircraft. The Forest Avenue property was transferred in September 2008, the Jackson Avenue property in December 2008, and the Blackburn Avenue property in April 2010. The Cessna was transferred to ESM in July 2010. Furthermore, in September 2008, the Debtor and Sally Edwards purchased, via a Master Commissioner's

2

Sale, property located on Chestnut Hill Drive in Ashland, Kentucky. Their bid was then assigned by them to ESM. This property was subsequently transferred to ESM by Master Commissioner's Deed on February 16, 2009. The Debtor and Sally Edwards also owned a condominium located on Ocean Boulevard in Pompano Beach, Florida, but this asset was not transferred to ESM.

On August 17, 2010, the Debtor and Sally Edwards filed their Chapter 7 petition as *pro se* joint debtors. After Sally Edwards passed away, the Debtor filed a motion to dismiss his Chapter 7 case on the basis that a substantial portion of the unsecured debt was attributable to Sally Edwards, and that the debt issues should be addressed in probate court and by the Debtor personally. The Chapter 7 Trustee objected to the Debtor's motion, claiming that the Debtor had intentionally undervalued assets listed in his schedules and had failed to disclose income. The Chapter 7 Trustee claimed the motion to dismiss was an attempt to avoid the administration of the Debtor's assets. The U.S. Trustee also objected, arguing that the Debtor had failed to establish cause for dismissal. The Debtor then retained counsel. At a hearing held on January 18, 2011, the Court denied the Debtor's motion to dismiss, and directed the Debtor to amend his schedules.

The Debtor filed amended schedules on February 2, 2011, and two days later filed his motion to convert his Chapter 7 case to Chapter 13. The motion to convert was also met by objections from the Chapter 7 Trustee and the U.S. Trustee. Both objections argued that the Debtor's motion to convert had not been brought in good faith, as evidenced by the discrepancies between the Debtor's original and amended schedules, and an overall lack of disclosure. The Court entered a memorandum opinion and order on June 23, 2011, denying the Debtor's motion to convert on the basis that it not been brought in good faith. The Court's holding was predicated upon a finding that the Debtor had undervalued his assets in his schedules in an attempt to not disclose potential equity, his lack of credibility regarding his true income and expenses, and his overall lack of forthrightness with the Court.

II.

The record and evidence before the Court shows that the Debtor has misrepresented the values of several of his assets in his bankruptcy schedules. The Debtor argues that the values in his schedules came from the tax-assessed values of those properties, and that he would have assigned different values if he had been represented by counsel. The Court, however, finds that the Debtor was aware that the properties had been appraised at much

3

higher values, and that the Debtor himself assigned the assets a higher value within six months of the petition date. The use of the much lower values demonstrates that the Debtor's disclosures and actions have been calculated to hide whatever equity may exist in the properties and to avoid the liquidation of these assets to the detriment of his creditors.

Appraisals of four of the Debtor's properties were performed in 2009 and 2010 for First & Peoples Bank and Trust Company ("First & Peoples Bank"). In these appraisals, the Forest Avenue property was valued at $235,000.00, the Jackson Avenue property at $145,000.00, the Blackburn Avenue property at $90,000.00, and the Chestnut Hill Drive property was valued at $115,000.00. The Debtor testified by 2004 examination that he was aware of these appraisals. Furthermore, on a March 2010 loan application submitted to First & Peoples Bank, the Debtor valued the Forest Avenue property at $250,000.00 and the Blackburn Property at $135,000.00. Jane Doe also listed the Blackburn Avenue property for sale at $109,000.00 within six months of the petition date with a listing agreement which contained the Debtor's signature. The Debtor's Schedule A, however, lists the value of the Forest Avenue property at $105,000.00, and the Blackburn Avenue property at $41,000.00. The outstanding balance of the loan secured by the mortgages against the Forest Avenue and Blackburn Avenue properties was listed at $252,000.00 by the Debtor.

The Debtor also valued the Chestnut Hill Drive property at $115,000.00 in the March 2010 loan application, a value identical to the appraised value given in the March 2009 appraisal report. This property was also valued at $110,000.00 by the Debtor on a financial statement signed by him and dated September 30, 2009. The Debtor, however, assigned a much lower value of $67,200.00 to the property in his schedules, with the outstanding balance of the loan listed as $89,000.00.

The evidence also shows that the Debtor was also aware that the Jackson Avenue property had appraised for $145,000.00 in July of 2009 and that the Debtor himself valued the property at $155,000.00 in the March 2010 loan application. The Debtor signed a listing agreement placing the Jackson Avenue property for sale at $149,900.00 within six months of the petition date. In his original schedule A, the Debtor listed the value of the property at only $99,700.00 and listed $100,000.00 as the outstanding balance of the loan.

The Florida condominium was valued by the Debtor at $200,000.00 in his March 2010 loan application. The original Schedule A, however, listed the value of the property at $116,970.00, with $168,000.00 listed as the outstanding balance of the loan. The amended

4

Schedule A lists the value of the property at $125,000.00, with $171,000.00 as the outstanding balance.

The Debtor insured his Cessna aircraft for $185,000.00 prior to the petition date, and valued the Cessna at $170,000.00 in the March 2010 loan application. On Schedule B, however, the Debtor listed the value of the Cessna at $94,000.00, with an outstanding balance of $100,000.00 listed on Schedule D.

The following table summarizes the values assigned to the Debtor's assets by the appraisals, the Debtor's loan application, and the Debtor's schedules:

|  | Appraisal | Loan Application | Schedules | Loan Balance |
|---|---|---|---|---|
| Forest Avenue | $235,000.00 | $250,000.00 | $105,000.00 | $252,000.00[*] |
| Jackson Avenue | $145,000.00 | $155,000.00 | $99,700.00 | $100,000.00 |
| Blackburn Avenue | $90,000.00 | $135,000.00 | $41,000.00 | $252,000.00[*] |
| Chestnut Hill Drive | $115,000.00 | $115,000.00 | $67,200.00 | $89,000.00 |
| Florida Condo | N/A | $200,000.00 | $116,970.00 | $168,000.00 |
| Cessna Airplane | N/A | $170,000.00 | $94,000.00 | $100,000.00 |

It must be noted that had the Debtor used the values from the appraisals, or even those he himself used in the loan application or listing agreements, these values would have indicated equity in each of these assets. The Debtor, however, used significantly lower values, thus creating the appearance that there is no equity. Indeed, the Debtor admitted at his 2004 examination that he knew the values provided in his schedules were below the fair market value (Doc. 24, pg. 4).

The Court finds that the Debtor knew that the fair market values of the Florida condo, the Forest Avenue property, the Blackburn Avenue property, the Chestnut Hill Drive property, the Jackson Avenue property, and the Cessna are significantly higher than the values listed in the schedules. The Debtor was well aware that the properties had been appraised and valued at higher values than those listed on the schedules, and the Debtor himself attributed substantially higher values to the assets within six months of the petition date. The Debtor chose to

---

[*] The $252,000.00 loan balance is secured by a mortgage against both the Forest Avenue and Blackburn Avenue properties.

disregard those higher valuations and list the assets at values far below actual fair market value, thus showing no equity. Based upon the foregoing, the Court finds that the Debtor undervalued these assets and that his valuations lack credibility.

The Debtor argues that he merely used the tax-assessed values of the properties, and that he would have presented different values had he been represented by counsel. While *pro se* debtors are given a certain amount of flexibility, the Debtor is a well-educated and long-time businessman who understood that the properties had been appraised at much higher values, and who had also claimed higher values less than six months prior to filing the Chapter 7 petition. Notwithstanding his *pro se* status, the Debtor may not simply choose to list the extremely low values for those properties and ignore the other, higher valuations he and others placed on these assets in the months leading up to the petition date. No matter what status a debtor may take in a bankruptcy case, he is always obligated to complete his schedules with "candor, accuracy and integrity." *Lewis v. Summers (In re Summers)*, 320 B.R. 630, 642 (Bankr. E.D. Mich. 2005) (quoting *In re Cutler*, 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003)).

### III.

Section 727 grants a discharge of all debts, with the exception of those listed in § 523:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b). As the party objecting to the discharge, the Trustee bears the burden of proving a ground for denial of the discharge. Fed. R. Bankr. P. 4005. "The elements of a violation of 11 U.S.C. § 727 must be proven by a preponderance of the evidence." *Keeney v. Smith (In re Smith)*, 277 F.3d 679, 685 (6th Cir. 2000). A "preponderance of the evidence" has been construed by the Sixth Circuit as that which is "more likely than not." *U.S. v. Moses*, 289 F.3d 847, 852 (6th Cir. 2002). The exceptions to discharge, however, are to be construed liberally in favor of the Debtor, as a total bar to discharge is considered an extreme penalty. *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 736 (Bankr. S.D. Ohio 2008).

The Trustee argues that the Debtor should be denied a discharge under § 727(a)(4)(A) for a false statement made under oath in connection with the Debtor's bankruptcy case. The

6

Court finds that the Debtor has violated § 727(a)(4)(A) by intentionally and knowingly undervaluing his assets in an attempt to hide whatever equity may exist in those assets.

Section 727(a)(4)(A) provides grounds for denial of discharge if the debtor knowingly and fraudulently made false statements under oath in connection with his bankruptcy case. 11 U.S.C. § 727(a)(4)(A). Discussing the policy behind § 727(a)(4)(A), the First Circuit stated:

> [T]he very purpose of . . . § 727(a)(4)(A) is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceeding, so that decisions can be made by the parties in interest based on fact rather than fiction. . . . Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

The values used by the Debtor in his schedules were significantly lower than the appraised and fair market values of the properties. Therefore, the determinative issue is whether intentionally undervaluing assets in the schedules satisfies each of the elements of a fraudulent statement made under oath. These elements are: (1) the Debtor made a statement while under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy case; (4) the Debtor knew the statement was false; and (5) the Debtor made the statement with fraudulent intent. *Keeney*, 277 F.3d at 685.

It is well-settled that a debtor's statements made in his schedules and amendments thereto are given under oath. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999); *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 158 (Bankr. N.D. Ohio 1998). Therefore, the Debtor's valuation of his assets was given under oath.

"The subject of a false oath is material if it 'bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Keeney*, 227 F.3d at 686 (quoting *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)). The values assigned by the Debtor to his assets in his schedules are material, as they bear a relationship to the existence and disposition of his property. *Harker v. West (In re West)*, 328 B.R. 736, 749 (Bankr. S.D. Ohio 2004) (debtor's representations of value in the schedules relate to assets of the estate and are therefore material).

7

The values provided by the Debtor did not disclose the true values of the properties, and they were therefore false statements. By undervaluing his assets in his schedules, the Debtor made a false statement under oath. *See Id.* (debtor made a false statement under oath when she undervalued her jewelry in her schedules). The remaining elements are whether the Debtor knew the statement was false, and whether he made the statement with fraudulent intent.

"Knowledge may be shown by demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *In re Sowers*, 229 B.R. at 158. The Debtor was aware of the significantly higher appraisal values, and the Debtor himself assigned much higher values to his assets prepetition. Furthermore, the Debtor acknowledged that the values were below fair market value at his 2004 examination. Therefore, the Debtor knew the values were false when he provided them in his schedules.

Fraudulent intent may be inferred from the Debtor's course of conduct. *In re Hamo*, 233 B.R. at 724. It can also be established by circumstantial evidence. *In re West*, 328 B.R. at 750. In a case similar to the one before the Court, in *In re West* the bankruptcy court concluded that even though the debtor had made a false statement by undervaluing her jewelry in her schedules, the undervaluation did not constitute a knowing and fraudulent misrepresentation within the meaning of § 727(a)(2)(A). *Id.* The debtor had testified that the value she used in her schedules was based on her counsel's instruction to estimate what the jewelry would bring if it was sold at a pawn shop. *Id.* The bankruptcy court found her testimony to be credible, even though her counsel's advice was based on a misunderstanding of the appropriate valuation method to use in completing the schedules. *Id.* Therefore, the court found that the debtor did not act in bad faith by relying on the instruction, and had not violated § 727(a)(4)(A) by undervaluing her jewelry. *Id.* at 751 (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986) ("Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts.")). The Bankruptcy Appellate Panel for the Sixth Circuit has similarly recognized that "[a] false statement or omission that is made by mistake or inadvertence is not sufficient grounds upon which to base the denial of a discharge, but a knowingly false statement or omission made by the Debtor with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge." *In re Hamo*, 233 B.R. at 725.

Here, however, the Debtor did not rely upon the mistaken advice of counsel, and was fully aware of the fact that the values used in his schedules were below fair market value. The

difference between the values used in his schedules and those the Debtor were aware of were not *de minimis*, but were rather enormous differences of tens-of-thousands of dollars. The use of these values was a calculated effort to eliminate the appearance of equity, and to mislead creditors and the officers of the Court as to the true value of the Debtor's assets. It was, therefore, a knowingly false statement made by the Debtor with "a reckless indifference to the truth." *Id.* Accordingly, the Trustee has demonstrated sufficient grounds for the denial of the Debtor's Chapter 7 general discharge under § 727(a)(4)(A).

III.

Having determined that the Debtor knowingly and fraudulently made a false statement under oath in violation of § 727(a)(4)(A), it is not necessary to address the remaining claims by the Trustee. A separate order will be entered granting judgment in favor of the Trustee and denying the Debtor his discharge under § 727(a).

Copies to:

Elizabeth Opell Thomas, Esq.
Rachelle C. Dodson, Esq.
United States Trustee

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge
Dated: Friday, July 01, 2011
(jms)**